MARION BOND COMPANY, TRUSTEE, *v.* MEXICAN COFFEE & RUBBER COMPANY ET AL.

[No. 19,982.  Filed December 17, 1902.  Rehearing denied May 14, 1903.]

CORPORATIONS.—*Organization.*—*Specification of Unauthorized Powers.*—*De Facto Corporation.*—*Collateral Attack.* — Where persons desiring to organize a corporation under a particular statute attempt in good faith to comply with the terms of the statute, but by mistake in naming the objects of the corporation include more than the statute authorized, the organization is a *de facto* corporation, and its legality as a corporation is not open to a collateral attack. *p. 560.*

PLEADING.—*Complaint.*—*Caption.*—*Trustee.*—The suffix, "trustee," to the name of the plaintiff in the caption of a complaint will be treated merely as *descriptio personae*, where it does not appear from averments of the complaint that the plaintiff is the trustee of an express or other trust, or that the action is prosecuted for the benefit of a third person. *p. 563.*

From the Superior Court of Marion County; *J. L. McMaster*, Judge.

Action by the Marion Bond Company against the Mexican Coffee & Rubber Company and others. From a judgment for defendants, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*S. M. Richcreek*, for appellant.
*C. E. Averill* and *C. F. Remy*, for appellees.

DOWLING, J.—Action by the appellant against the appellees to enforce the collection of unpaid assessments for street improvements. Answers in abatement were filed by the appellees. Demurrers to these answers were overruled, and, the appellant refusing to plead further, judgment was rendered on the demurrers. The answers set out the articles of association of the appellant and alleged that at the time they were filed there was no statute of this State authorizing the formation of a corporation for the purpose named in said instrument; that the appellant had

no legal existence as a corporation; and that its pretended articles of association were void.

The proceedings for the incorporation of the appellant were taken under the act of 1887 (Acts 1887, p. 41) for the organization of voluntary associations, and the amendments of that act. The articles in question were filed in the proper office July 27, 1899. The act of March 5, 1895 (Acts 1895, p. 99), amending the act of 1887, *supra,* provided that any number of persons might associate themselves by written articles, to be signed by each person who might be a member at the time of organization, specifying the objects of the association, the corporate name adopted to designate such objects, the name and place of residence of each member or stockholder, with an impression and description of the corporate seal, and in what manner persons should be elected or appointed to manage the business of the association. The act applied to any association which had been or might afterwards be formed for either of the purposes, eighteen in number, specified in the act. Among these purposes were the following: "(9) * * * Buying, holding and selling real estate." "(13) * * * Buying and selling merchandise, and conducting mercantile operations." "(16) * * * Carrying on the business of insuring titles to real estate, and to make abstracts, loans and collections in connection therewith, and otherwise act as agent, attorney in fact and trustee for persons and corporations."

The articles filed by the appellant thus stated the purposes of its organization: "The object of our said association shall be the buying and selling merchandise, and conducting mercantile operations; buying and selling real estate; buying and selling state, county, municipal, and all other bonds; of borrowing and loaning money; of buying and selling promissory notes, bills of exchange, accounts, choses in action, fees, and all other evidences of indebted-

ness; and to act as agent, attorney in fact, and trustee, for persons and corporations."

Appellees contend that, under the statute, a voluntary association could be formed for a single purpose only, and that as the articles of the appellant designated more than one of the purposes specified in the statute, and other purposes not authorized at all, the articles were void, the association never had a corporate existence, and therefore could not act as a trustee or maintain a suit in a corporate capacity. No other defect or irregularity in the proceedings for the incorporation of the appellant is pointed out.

We are unable to adopt the views of the appellees. The statute authorizes the organization of voluntary associations for some of the purposes mentioned in appellant's articles. Among these are the franchises of buying and selling merchandise or real estate. These purposes were expressly named in the statute. The answer in abatement admits that the corporate organization of the appellant was regular and complete in all respects excepting in the designation of the purposes of its incorporation. It is evident that the members attempted in good faith to form a corporation under the statute. In the statement of the objects contemplated perhaps they fell into error in naming too many, but this irregularity did not, in our opinion, render the proceedings void, or deprive the association of its corporate character and powers. So far as the pleadings disclose, appellant has never engaged in any business or done any corporate act not authorized by its articles of association. For the purposes of this suit, at least, it was a corporation *de facto,* if not *de jure.* Here was a statute under which a corporation *de jure* could be formed for the purpose of buying and selling property of certain kinds, an attempt to organize under that statute, and an exercise by the proposed association of corporate powers in the execution of that purpose. In selling merchandise or real estate the appellant had the right to receive in payment street

improvement bonds, or like instruments. If they were not paid, one of its general powers as a corporation was the right to sue upon the claims. What the effect of the supposed irregularity in the organization of the appellant might be in a direct proceeding by the State in the nature of *quo warranto* we need not say. The statute under which the appellant was incorporated did not make the irregularity complained of a ground of forfeiture of the corporate franchises. It does not appear that the appellant has attempted to exercise more than one of the particular franchises mentioned in its written articles.

It is said in Thompson, Corporations, §229: "The mere fact that adventurers, in drawing their articles of association, claim greater powers or privileges than the governing statute allows, will not necessarily prevent them from becoming incorporate, since the law will reject the excessive claim as surplusage. In such a case all the acts done in pursuance of the illegal matter will be invalid, but the title of the corporation, as to all matters authorized by the statute, can not be impeached collaterally by reason of the illegal matter."

In proceedings by the State in the nature of *quo warranto,* where a corporation assumes to exercise a particular franchise, which it has no power, under its charter, to use, the judgment may be and generally is that it be ousted of the particular franchise, without affecting the right of the corporation to retain and enjoy its proper franchises. *People* v. *Rensselaer, etc., R. Co.,* 15 Wend. 113, 30 Am. Dec. 33; *Commonwealth* v. *Delaware, etc., Canal Co.,* 43 Pa. St. 295, 301; *State, ex rel.,* v. *City of Topeka,* 31 Kan. 452, 2 Pac. 593; *State, ex rel.,* v. *Regents,* 55 Kan. 389, 40 Pac. 656, 29 L. R. A. 378.

But where the corporation has been guilty of acts which, by statute, are made a cause of forfeiture, the rule is different. *State* v. *Pennsylvania, etc., Canal Co.,* 23 Ohio St. 121; *State* v. *Oberlin, etc., Assn.,* 35 Ohio St. 264.

The cases of *West* v. *Bullskin, etc., Co.,* 32 Ind. 138 and *O'Reiley* v. *Kankakee, etc., Co.,* 32 Ind. 169, were under the drainage acts, which differed materially from the statute relating to the organization of voluntary associations, and the reasons there given for a strict construction of the requirement concerning the statement of the objects of the association do not apply here.

*Williams* v. *Citizens Enterprise Co.,* 25 Ind. App. 351, was an action for the collection of a subscription to the capital stock of a proposed corporation, and in such cases it has been held that a different rule prevails, and that a perfect organization *de jure* must be shown.

In view of the proceedings taken by the members to incorporate the Marion Bond Company under the voluntary association act, we think it clear that a corporation *de facto* was created, which had the power to sue, and to enter into certain contracts.

Being such corporation *de facto,* the legality of its organization was not open to collateral attack in an action brought by it to enforce the collection of street improvement bonds held by said association. *Gibbs' Estate,* 157 Pa. St. 59, 27 Atl. 383, 22 L. R. A. 276.

It is said in Beach, Priv. Corp., 866: "The validity of a corporate charter can not be questioned collaterally by those claiming adverse rights, but only by the state. * * * And the legality of the incorporation of an acting corporation can not be questioned in an action by it on a transferable contract of which it is the equitable assignee." See, also, Morawetz, Priv. Corp. (2d ed.), §745; 7 Am. & Eng. Ency. Law (2d ed.), 655, and notes 1, 2; *Jersey City Gaslight Co.* v. *Consumers Gas Co.,* 40 N. J. Eq. 427, 2 Atl. 922; *Toledo, etc., R. Co.* v. *Johnson,* 55 Mich. 456, 21 N. W. 888; *State, ex rel.,* v. *Minnesota, etc., Mfg. Co.* (Minn.), 41 N. W. 1020, 3 L. R. A. 510; *Heaston* v. *Cincinnati, etc., R. Co.,* 16 Ind. 275, 79 Am. Dec. 430; *Williamson* v. *Kokomo, etc., Assn.,* 89 Ind. 389; *Williams*

v. *Citizens R. Co.,* 130 Ind. 71, 15 L. R. A. 64, 30 Am. St. 201.

It was said by this court in *Doty* v. *Patterson,* 155 Ind. 60, 64: "It is settled in this State that, when there is a statute authorizing the creation of a corporation, an attempt to comply with the statute, and an actual exercise of corporate functions, although some formalities required by law have been omitted, there is at least a corporation *de facto,* the legal existence of which can only be questioned in a direct proceeding brought by the proper party for that purpose. * * * This rule is not limited to cases where one by contract admits corporate existence, but is a rule of general application."

The good faith of the members of the appellant association in attempting to incorporate it is not questioned by the plea in abatement. They effected an apparent organization under the statute, and they proceeded in a regular manner to exercise a power authorized by the governing statute and included in their articles of association. Under these circumstances it is entirely clear that the collateral attack upon the corporate organization and powers attempted in the plea in abatement was unauthorized, and a demurrer to each of said pleas should have been sustained.

In considering the pleadings in this case, we have treated the suffix "trustee," in the caption of the complaint and in the answer, as mere *descriptio personae.* It does not appear from any averment in the complaint that the appellant is the trustee of an express or other trust, or that it prosecutes this action for the use or benefit of a third person. When an action is brought by a trustee, the complaint should disclose the name of the *cestui que trust* so that an issue, if necessary, may be formed upon that allegation, and also that the *cestui que trust* may be bound by the judgment or decree. §252 Burns 1901, §252 R. S. 1881 and Horner 1901; 22 Ency. Pl. & Pr., 193; *Mitchell* v.

*St. Mary,* 148 Ind. 111; *Wolcott* v. *Standley,* 62 Ind. 198; *Musselman* v. *Cravens,* 47 Ind. 1.

The appellant, as the owner of a transferable contract, of which it was, or might lawfully be, the legal or equitable assignee, had the right to bring the action in its own name. If, upon a trial upon proper issues, it appeared to be a mere agent, another question would be presented. *Rawlings* v. *Fuller,* 31 Ind. 255.

The answers in abatement were insufficient, and for the errors of the court in overruling the demurrers to them, the judgment is reversed, with instructions to sustain the demurrers, and for further proceedings in accordance with this opinion.